## A96A0642. INTERFACE GROUP-NEVADA, INC. v. FREEMAN DECORATING COMPANY.
### (473 SE2d 573)

POPE, Presiding Judge.

Interface Group-Nevada, Inc. appeals the trial court's grant of summary judgment to Freeman Decorating Company in this indemnification case. Concluding that the trial court erred, we reverse.

The evidence shows that Interface organized a computer trade show in Atlanta, Georgia, known as COMDEX. It entered into a licensing agreement with the Georgia World Congress Center ("GWCC") to use its facilities for the show. Pursuant to an existing contract between Interface and Freeman, Freeman was responsible for setting up the show. To fulfill its obligations to Interface, Freeman contracted with its sister company, Sullivan Transfer Company, to provide drayage services. While working as Sullivan's employee, Rebecca Ackridge was injured when she attempted to ride a motor scooter between traffic cones and barrels that GWCC had erected to prevent people from entering a construction area. Unbeknownst to Ackridge, GWCC employees had tied a rope between the barrels, which allegedly was not visible. The rope caught Ackridge across her neck and pulled her to the ground.

Ackridge sued GWCC and Interface for negligence. Before trial, however, she dismissed her claim against Interface. GWCC asserted a cross-claim against Interface seeking indemnification under the terms of the licensing agreement it had with Interface. GWCC then moved for summary judgment on its cross-claim based on the indemnity provision in the licensing agreement. The trial court granted summary judgment to GWCC, ruling that Interface's indemnity obligation to GWCC extended to any claims for negligence on GWCC's part, including claims premised on GWCC's sole negligence. Interface does not challenge the validity of that ruling.

Following the ruling, Interface filed a third-party complaint against Freeman, wherein it sought indemnification under the contract Freeman and Interface had executed. That contract provides in pertinent part that: "Freeman and Interface shall each indemnify, defend and hold the other harmless from and against any and all liabilities, suits, and claims made against the other which arise from the misfeasance, malfeasance, or nonfeasance of the indemnifying party. Neither Freeman nor Interface shall, by reason of this [contract], assume any liability for the negligence or wilful acts of the other, nor shall either be deemed to have indemnified the other against the negligence or wilful acts of the other." Both Freeman and Interface filed motions for summary judgment seeking a determination as to whether Freeman was obligated to indemnify Interface under the above-mentioned contractual provision. The trial court

granted Freeman's motion for summary judgment holding that as a matter of law Freeman had no such obligation. The trial court then dismissed Interface's third-party complaint. Thereafter, Ackridge's suit proceeded to trial, during which Ackridge agreed to settle the case for $200,000, which Interface paid to her.

1. Interface contends that the trial court erred in granting Freeman's summary judgment motion because there are issues of material fact regarding whether Interface's liability or the claim against it arose from any misfeasance, malfeasance or nonfeasance on Freeman's part. We agree. The trial court ruled that Freeman was entitled to summary judgment because Interface's liability to GWCC "[did] not rest on the negligence of Freeman." In reaching its ruling, the trial court apparently concluded that to "arise from" means the same thing as being "proximately caused by." Under such an interpretation, Interface would be entitled to indemnity from Freeman only if it was found vicariously liable for Freeman's negligence; yet in this case, no such liability could exist because it is undisputed that both Freeman and Interface were Ackridge's statutory employers at the time of her accident. See OCGA §§ 34-9-8 (a), 34-9-11; *Fowler-Flemister Concrete v. Sumner*, 209 Ga. App. 312 (433 SE2d 329) (1993).[1] This interpretation, however, is too restrictive and contrary to Georgia law.

"Arising from" does not mean the same thing as "proximately caused by." See *Abercrombie v. Ga. Farm Bureau &c.*, 216 Ga. App. 602, 604 (454 SE2d 813) (1995); *Southeastern Fidelity Ins. Co. v. Stevens*, 142 Ga. App. 562, 563-564 (1) (236 SE2d 550) (1977). Instead, this contractual term has been held to encompass "almost any causal connection or relationship. . . ." Id.; see *Township of Springfield v. Ersek*, 660 A2d 672 (Pa. 1995) ("arising out of" means causally connected with, not "proximately caused by"). Consequently, any claim against Interface or liability it incurred does not have to be the direct proximate result of Freeman's misfeasance, malfeasance or nonfeasance in order to "arise from" it under the indemnity provision found in their contract. Nor, as the dissent contends, is Freeman's indemnity obligation limited to circumstances in which Interface has been, or could be, held vicariously liable for Freeman's acts or omissions. If a claim or loss is even partly attributable to the negligence of an indemnitor, the obligation to indemnify arises.[2] See *Myers v. Texaco*

---

[1] Although tort liability may be barred by the exclusive remedy provision of the Workers' Compensation Act, that provision does not bar enforcement of a contractual indemnity provision. See *Seaboard Coast Line R. Co. v. Maverick Materials*, 167 Ga. App. 160 (305 SE2d 810) (1983); *Arthur Pew Constr. Co. v. Bryan Constr. Co.*, 148 Ga. App. 114 (251 SE2d 105) (1978).

[2] In this case, we note that Freeman's obligation to indemnify Interface is limited in that it does not extend to claims or liability arising from Interface's own negligence. There

*Refining &c.*, 205 Ga. App. 292, 296-297 (2) (422 SE2d 216) (1992); *Central of Ga. R. Co. v. Ga. Ports Auth.*, 190 Ga. App. 518, 520 (379 SE2d 540) (1989).

In light of the above, we conclude that there is a material issue of fact regarding whether the claim against Interface or the liability it incurred arose from Freeman's misfeasance, malfeasance or nonfeasance. It is undisputed that Sullivan was Freeman's agent at the COMDEX show. There is evidence in the record that Sullivan's general manager had run into the same rope barricade on the night before Ackridge's accident, yet failed to report the hazard to GWCC, Interface, Sullivan or anyone else. Failing to report the hazard constituted a violation of standard policy. There also is evidence that GWCC had repeatedly notified both Freeman and Sullivan that the area in which Ackridge was injured was off-limits to all persons. It was standard practice to disseminate such information to all employees during daily safety meetings; yet in this case, there is a question as to whether Ackridge was given the information. If proven, this failure to report a known hazard and inform Ackridge that the area in which she was injured was off-limits, would not only constitute a breach of duty owed to Ackridge, but also could constitute misfeasance, malfeasance or nonfeasance on Freeman's part. Absent any such conduct, Ackridge might have avoided injury and, therefore, never filed suit against GWCC in the first place. Accordingly, summary judgment should not have been granted to Freeman. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

2. Because there are issues of material fact to be resolved in this case, Interface's contention that it is entitled to summary judgment is without merit.

*Judgment reversed. McMurray, P. J., Birdsong, P. J., Blackburn and Ruffin, JJ., concur. Beasley, C. J., Andrews, Johnson and Smith, JJ., dissent.*

ANDREWS, Judge, dissenting.

Because I believe the trial judge correctly decided in Freeman's favor the issue of its obligation to indemnify Interface for its liability to GWCC, I must respectfully dissent.

As acknowledged by the majority, Ackridge has been paid workers' compensation benefits on behalf of Freeman, her statutory employer, and there is no longer the possibility of any "liabilities, suits and claims" arising from this accident which could legally be attributable to Freeman's negligence.

Additionally, Ackridge dismissed her claim against Interface,

---

is, however, no evidence of such negligence in the record.

also her statutory employer, on November 23, 1994, and in the consolidated pretrial order filed with the court on December 30, 1994, and consented to by all parties, Ackridge's claim is stated as: "[w]hile in the course and scope of her employment, Plaintiff was travelling on a motorized-scooter across the Georgia World Congress Center F Marshalling yard area, when she was seriously injured. *A rope, which had been secured across the roadway by employees of the Defendant [GWCC], caught her by the throat and threw her to the pavement. Unknown to the Plaintiff, employees of the Georgia World Congress Center had stretched a rope across the roadway in such a fashion that it was not visible to those using the roadway and without warning of the dangerous condition created.*" (Emphasis supplied.)

On July 10, 1995, plaintiff Ackridge reiterated her position that "the only evidence of negligence in this case rests squarely with the Georgia World Congress Center."

While the majority suggests a theoretical possibility that a question of fact exists as to whether Freeman knew about the rope and did not advise its employees, that possibility is negated by plaintiff Ackridge's stated position in the litigation at hand which is an admission in judicio. *O'Brien Family Trust v. Glen Falls Ins. Co.*, 218 Ga. App. 379, 381 (2) (461 SE2d 311) (1995); *Plunkett v. Ginsburg*, 217 Ga. App. 20 (456 SE2d 595) (1995). Additionally, the only duty which Freeman had for any such warning was to its employee Ackridge, not to Interface or GWCC, and she has been compensated as far as Freeman and Interface are concerned by workers' compensation.

Further, " ' "[t]he scope of . . . indemnity provisions . . ., manifested in the form of written contracts, is a question of law for the court." (Cit.)' *Westinghouse Elec. Corp. v. Williams*, 183 Ga. App. 845, 846 (2) (360 SE2d 411) (1987)." *Tokheim Corp. v. First American Bank &c.*, 206 Ga. App. 105, 107 (1) (424 SE2d 54) (1992). In so considering a contract of indemnification, the court construes it strictly against the indemnitee, here Interface. *DeKalb County v. Lenowitz*, 218 Ga. App. 884, 889 (4) (463 SE2d 539) (1995); *Westinghouse Elec. Corp.*, supra at 847 (2).

The cases relied upon by the majority for its interpretation of "arising from the misfeasance, malfeasance, or nonfeasance of the indemnifying party" are also inapposite to an indemnity. Rather, both *Abercrombie*, supra, and *Southeastern Fidelity*, supra, are both cases involving interpretation of automobile insurance policies, which are construed in a broad, not strict, sense.

In the context of this case, at the time the order appealed was entered, there was no claim against Freeman for negligence, only one against GWCC. Interface's liability for GWCC's negligence was solely premised on the broad language of its indemnity agreement with GWCC, under which Interface would be responsible for GWCC's own

negligence.

Therefore, I conclude that the trial court properly interpreted the indemnity language and her ruling should be affirmed.

I am authorized to state that Chief Judge Beasley, Judge Johnson and Judge Smith join in this dissent.

DECIDED JUNE 28, 1996 — ▮▮▮▮▮▮▮▮

*Johnson & Kane, Frederick A. Johnson,* for appellant.

*Harman, Owen, Saunders & Sweeney, Timothy J. Sweeney, Greene, Buckley, Jones & McQueen, Harold S. White, Jr., J. Russell Phillips, Howard K. Henson,* for appellee.